# UNITED  STATES  DISTRICT  COURT
## SOUTHERN  DISTRICT  OF  OHIO
### WESTERN  DIVISION

---

William H. Gorman,
    Petitioner,

      vs.                                        Case No. 1:03cv865
                                                    (Dlott, J.; Black, M.J.)

Tim Brunsman,[1]
    Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Chillicothe Correctional
Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition,
respondent's "Answer And Return of Writ," petitioner's "traverse" in reply to the
return of writ, and petitioner's supplement to the petition as allowed by the Court
on January 19, 2005.  (*See* Docs. 1, 15, 18, 19, 20).

### Procedural Background

On May 10, 1984, petitioner was indicted by the Hamilton County, Ohio
grand jury on two counts of rape in violation of Ohio Rev. Code § 2907.02; one

---

[1]  In the petition, petitioner properly named as respondent James Erwin, who was then
Warden of the Chillicothe Correctional Institution (CCI), where petitioner is incarcerated.
However, since the time petitioner instituted this action, Tim Brunsman has replaced James
Erwin as CCI's Warden.  Because Tim Brunsman is the individual who currently has custody
of petitioner, the caption of this case is hereby changed to reflect the proper party respondent.  *See*
Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll.
§ 2254.

count of attempted rape in violation of Ohio Rev. Code §§ 2923.02 and 2907.02; and one count of gross sexual imposition in violation of Ohio Rev. Code § 2907.05.  (Doc. 15, Ex. 2).  The charges arose from a series of sexual assaults allegedly committed by petitioner against his adopted daughter, who was under the age of thirteen at the time.

Petitioner's counsel filed a motion to dismiss the indictment "on the basis that the prosecution has failed to set forth any time frame for which the Defendant can adequately prepare a[n alibi] defense." (*Id.*, Ex. 3).  After a hearing held on July 20, 1984, the motion was overruled.  (*Id.*, Exs. 5, & 30, Tr. 8-15).

The matter proceeded to trial before a jury, which found petitioner guilty as charged.  On September 13, 1984, petitioner was sentenced to a life term of imprisonment for each of the rape offenses; an eight (8) to fifteen (15) year prison term, with eight (8) years of actual incarceration, for the attempted rape offense; and a two (2) year term of imprisonment for the gross sexual imposition offense; each of these sentences was to be served consecutively.  (*Id.,* Ex. 6).

With the assistance of counsel, petitioner filed a direct appeal to the Ohio Court of Appeals, First Appellate District, claiming in four assignments of error that the trial court committed prejudicial error by (1) denying his motion to dismiss the indictment; (2) refusing "to permit him to present testimony concerning the victim's sexual conduct with her brother;" (3) "allowing prejudicial testimony elicited on behalf of the state . . . regarding physical violence and threats allegedly perpetrated by" him; and (4) "admitting into evidence on redirect examination, testimony of the mother of the prosecuting witness that was highly prejudicial, and constituted inadmissible hearsay clearly beyond the scope of redirect examination." (*See id.,* Ex. 9, pp. 2, 4, 5, 10).  On October 23, 1985, the Ohio Court of Appeals issued an Opinion overruling petitioner's assignments of error and affirming the trial court's judgment.  (*Id.*, Ex. 9).  Petitioner did not timely appeal this decision to the Supreme Court of Ohio.

Indeed, it appears from the record that petitioner did not take any further action to challenge his conviction until nearly nine years later, when on September 27, 1994, he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the United States District Court for the Southern District of Ohio, Eastern Division, in the case entitled *Gorman v. McAninch,* 2:94-cv-00931 (Smith, J.; Abel, M.J.).  (*See id.,* Ex. 31).  The petition was dismissed on March 27, 1995 on

the ground that petitioner had not exhausted certain claims by way of a motion for delayed appeal to the Supreme Court of Ohio, or his ineffective assistance of appellate counsel claim by way of an application for delayed reconsideration in the Ohio Court of Appeals.  (*See id.,* Brief, p. 10; *see also* Doc. 18, Appendix 92-94). In so ruling, the district court rejected petitioner's argument that he was denied his right of appeal and precluded from filing a delayed appeal or a motion for reconsideration in the state courts based on the Ohio Court of Appeals' "refusal to provide him with trial and appellate records."  (Doc. 18, Appendix 94). Respondent states that this ruling was appealed to the Sixth Circuit, which denied a certificate of appealability on September 27, 1995, and to the United States Supreme Court, which denied certiorari on March 25, 1996.  (Doc. 15, Brief at p. 10).

Approximately four months later, on August 1, 1996, petitioner filed a *pro se* petition to vacate or set aside sentence with the Hamilton County Court of Common Pleas, alleging twelve claims of error.  (*Id.,* Ex. 19).  The Common Pleas Court dismissed the petition on October 15, 1996 in a written entry containing findings of fact and conclusions of law.  (*Id.,* Ex. 20).

Petitioner timely appealed this decision to the Ohio Court of Appeals, First Appellate District, raising eight assignments of error on appeal.  (*See id.*, Exs. 22, 23).  On October 10, 1997, the Court of Appeals overruled the assignments of error and affirmed the trial court's judgment dismissing the post-conviction petition. (*Id.,* Ex. 25).  Petitioner timely sought leave to appeal to the Supreme Court of Ohio, which declined jurisdiction to hear the case and dismissed the appeal "as not involving any substantial constitutional question" on January 21, 1998.  (*Id.,* Ex. 29).

Within three months thereafter, on April 13, 1998, petitioner next filed a *pro se* application for delayed reopening of his appeal pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, First Appellate District.  (*Id.,* Ex. 13).  He claimed as "good cause" for his untimely filing that "he was promised and led to believe by attorney William G. Fowler that he would file all Motions, obtain all applicable Court Records, and do all that was necessary to perfect an Application for Reconsideration;" that "[w]hen it became obvious that William G. Fowler did not intend to file any Motions, [he] contacted the two attorneys who had represented him at trial and on appeal and requested a copy of the records of his case so he could perfect a Pro Se Motion;" that these attorneys informed him the court records were not in their possession, but that he "could obtain them simply

by writing the Clerk of Courts with a Document Request;" that he made such a request, which was refused by the Clerk of Courts; that he also filed a motion with the court to obtain his court records, which was "summarily dismissed;" and that he "could not satisfy Ohio Appellate Rules without being able to refer to the record" denied to him and "would have to rely on his memory after ten years in prison in 1994 to perfect an Application For Reconsideration that would be nothing more than a meaningless ritual." (*Id.,* p. 3).

On July 23, 1998, the Ohio Court of Appeals denied petitioner's application for reopening, reasoning in relevant part as follows:

> App.R. 26(B)(2)(b) requires a showing of good cause for delay if an application for reopening is filed more than ninety days after journalization of the appellate judgment. Appellant has failed to show good cause for filing his application more than twelve years after his appellate judgment was journalized. Concerning the period of time before App.R. 26(B) was enacted, the Ohio Supreme Court stated in *State v. Reddick* (1995), . . . 647 N.E.2d 784, 786:
>
> > [A]n applicant who seeks to reopen an appellate judgment journalized before [the enactment of App.R. 26(B)] may not simply rely on the fact that App.R. 26(B) did not exist [at that time], but must show good cause why he or she did not attempt to invoke the procedures available under former App.R. 26 and 14(B).

(*Id.*, Ex. 14).

Petitioner timely appealed this decision to the Supreme Court of Ohio. In an Entry issued October 7, 1998, the court dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 18).

Less than two months later, on December 3, 1998, petitioner mailed a second federal habeas corpus petition to the Sixth Circuit in an effort to obtain the circuit court's authorization to file a successive petition. (*See* Doc. 1, Appendix 243, p. 6 & n.4). On June 11, 1999, the Sixth Circuit determined the petition was not successive, and the matter was remanded to the district court for consideration of petitioner's grounds for relief. (*Id.*; *see also* Doc. 15, Ex. 32).

4

The second habeas petition was filed with this Court on April 5, 2000 in the case entitled *Gorman v. Erwin,* 1:00cv326 (Beckwith, J.; Hogan, M.J.). Respondent filed a motion to dismiss the petition on the ground that it was barred from review by the applicable one-year statute of limitations set forth in 28 U.S.C. § 2244(d), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, which governs federal habeas corpus petitions brought by persons in custody pursuant to a state court judgment. (*Id.,* Ex. 33 (Doc. 12)). The motion was denied because pursuant to the Court's calculations, petitioner had filed his habeas petition with the Sixth Circuit before the one-year limitations period was due to expire. (Doc. 1, Appendix 241-45).

On September 24, 2002, the petition was dismissed without prejudice as a "mixed" petition based on petitioner's failure to exhaust two of his claims by way of the available state remedy of a delayed appeal to the Supreme Court of Ohio. (*See* Doc. 15, Exs. 34, 35). In dismissing the petition, the Court tolled the applicable statute of limitations set forth in 28 U.S.C. § 2244(d)(1) "effective December 3, 1998, the date the petition was filed" with the Sixth Circuit. (*Id.,* Ex. 35, p. 2).[2] The tolling of the statute was expressly conditioned on "Petitioner's pursuing the state remedy identified [as unexhausted by the Court] within thirty days of the date of this Order **and** on Petitioner's filing a renewed petition for writ of habeas corpus in this Court within thirty days after exhaustion of his state court remedies." (*Id.*) (emphasis in original). The Court also denied petitioner a certificate of appealability. (*Id.*). Petitioner appealed this decision to the Sixth Circuit, which denied petitioner's application for certificate of appealability on May 13, 2003. (*Id.,* Ex. 33).

Apparently in response to the order dismissing his second federal habeas petition, petitioner filed a *pro se* motion for delayed appeal with the Supreme Court of Ohio on December 6, 2002, while his application for certificate of appealability was pending before the Sixth Circuit. (*Id.*, Ex. 11). On January 15, 2003, the state

---

[2] Although the petition was stamped as "filed" on December 10, 1998 by the Sixth Circuit's Clerk's Office, the petition was deemed "filed" on December 3, 1998, the date that petitioner claimed he mailed it, because under *Houston v. Lack,* 487 U.S. 266 (1988), the filing date for a *pro se* federal habeas corpus petition is actually the date on which the prisoner provides his papers to prison authorities for mailing. *See Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.), *cert. denied,* 537 U.S. 1091 (2002); *In re Sims,* 111 F.3d 45, 47 (6th Cir. 1997).

supreme court denied petitioner's motion for leave to file a delayed appeal and dismissed the action. (*Id*. Ex. 12).

Over nine months later, petitioner initiated the instant federal habeas corpus action.  In the petition, which was signed by petitioner on October 20, 2003 and was stamped as "filed" on December 3, 2003, petitioner alleges the following grounds for relief:

**Ground One**:  The Petitioner was denied the effective assistance of trial counsel. . . .

**Ground Two**:  [Petitioner] was denied a trial free of Judicial and Juror bias. . . .

**Ground Three**:  [Petitioner] was denied a trial free of Judicial and Juror misconduct. . . .

**Ground Four**:  [Petitioner] was denied a trial free of Prosecutorial Misconduct. . . .

**Ground Five:**  [Petitioner] was not properly charged in the Indictment. . . .

**Ground Six:**  [Petitioner] was denied rights guaranteed by the United States Constitution . . . and the State of Ohio Constitution . . . when his wife was not advised of her right to not testify if she chose not to when [petitioner] did not give his consent for her to testify and she was forced to testify to hearsay testimony and allowed to provide the Court with a privileged communication from her husband.

**Ground Seven:**  [Petitioner] was denied the effective assistance of counsel on Appeal. . . .

**Ground Eight:**  [Petitioner] has been denied the same right to appeal afforded to others who are not indi[]gent and the right to appeal Pro-Se. . . .

6

(*Id.*, "attached Memorandum Of Law In Support Of Petition," pp. 2, 38, 42, 55, 63, 68, 76, 82).

## OPINION

### The Petition Should Be Dismissed With Prejudice Because It Is Time-Barred Under 28 U.S.C. § 2244(d)

In the return of the writ, respondent argues that although his motion to dismiss the prior federal habeas corpus petition on statute of limitations grounds was denied, the instant petition is subject to dismissal with prejudice because it is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). (Doc. 15, Brief, pp. 13-18).

Under 28 U.S.C. § 2244(d)(1), a person in custody pursuant to the judgment of a state court must file an application for writ of habeas corpus within one year from the latest of: (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, petitioner seeks habeas corpus relief based on alleged errors that occurred during his state criminal trial in 1984 and on direct appeal from his conviction, which concluded in 1985. As the Court previously found in denying respondent's motion to dismiss petitioner's prior petition in Case No. 1:00cv326 on statute of limitations grounds, "petitioner had discovered the factual predicate [underlying all his grounds for relief] by the time he filed his first petition for federal habeas corpus relief in September 1994." (*See* Doc. 1, Appendix 243; Doc. 15, Ex. 35). Because all of petitioner's claims had accrued before the enactment on April 24, 1996 of the AEDPA's one-year statute of limitations, petitioner was

entitled to a reasonable period of time, consisting of a one-year grace period from the date of the AEDPA's enactment, or until April 24, 1997, in which to file a federal habeas corpus petition. *See Bronaugh v. Ohio,* 235 F.3d 280, 284-85 (6th Cir. 2000) (and cases cited therein). Therefore, the statute of limitations commenced running on April 24, 1996 and expired one year later absent the application of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) or any other applicable tolling principles.

During the one-year grace period beginning April 24, 1996, petitioner was entitled to the benefits of the tolling provision set forth in 28 U.S.C. § 2244(d)(2) based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2).[3] The tolling provision, however, does not "'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully expired." *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998).[4] Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Rashid,* 991 F. Supp. at 259.[5]

Here, the statute of limitations, which commenced running on April 24, 1996, ran for only 99 days before it was tolled on August 1, 1996, the date petitioner filed his *pro se* petition for state post-conviction relief with the Hamilton County Court of Common Pleas. (*See* Doc. 15, Ex. 19). The statute remained tolled through the ninety-day period ending April 21, 1998 in which petitioner could have sought, but did not seek, certiorari review by the United States Supreme

---

[3] *See also Bennett v. Artuz,* 199 F.3d 116, 119 (2nd Cir. 1999), *aff'd,* 531 U.S. 4 (2000); *Gaskins v. Duval,* 183 F.3d 8, 10 (1st Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998) (per curiam); *Gendron v. United States,* 154 F.3d 672, 675 & n.3 (7th Cir. 1998) (per curiam), *cert. denied,* 526 U.S. 1113 (1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 (10th Cir. 1998); *Lovasz v. Vaughn,* 134 F.3d 146, 148-49 (3rd Cir. 1998); *cf. Morris v. Bell,* 124 F.3d 198 (table), No. 96-5510, 1997 WL 560055, at *3 (6th Cir. Sept. 5, 1997) (unpublished), *cert. denied,* 522 U.S. 1149 (1998).

[4] S*ee also Smith v. McGinnis,* 208 F.3d 13, 16-17 (2nd Cir.) (and cases cited therein), *cert. denied,* 531 U.S. 840 (2000); *Sorce v. Artuz,* 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999) (and cases cited therein); *Blasi v. Attorney General of Pennsylvania,* 30 F.Supp.2d 481, 485 (M.D. Pa. 1998)

[5] *Cf. Cox v. Angelone,* 997 F. Supp. 740, 743-44 (E.D. Va. 1998); *Healy v. DiPaolo,* 981 F. Supp. 705, 706-07 (D. Mass. 1997).

Court from the Supreme Court of Ohio's January 21, 1998 final ruling in the state post-conviction matter (*id.,* Ex. 29). *See Abela v. Martin,* 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc), *cert. denied,* 541 U.S. 1070 (2004).[6]

On April 13, 1998, during the time the statute of limitations was tolled by the state post-conviction proceedings, petitioner filed his *pro se* application for delayed reopening of his appeal with the Ohio Court of Appeals. (*See* Doc. 15, Ex. 13). On July 23, 1998, the Ohio Court of Appeals denied this application as untimely filed, because petitioner had not shown "good cause" for his delay in filing as required under Ohio R. App. P. 26(B). (*Id.,* Ex. 14). The Supreme Court of Ohio's subsequent summary dismissal of petitioner's appeal from that decision is presumed to rely on the same ground. *Cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995), and *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991)), *cert. denied,* 531 U.S. 1089 (2001).

In petitioner's second federal habeas case, Case No. 1:00cv326, the district court determined in dismissing respondent's motion to dismiss on August 8, 2000 that the statute of limitations was statutorily tolled during the pendency of the state reopening proceeding in the absence of any "argument or evidence . . . to suggest petitioner's state collateral review application[ was] not 'properly filed'" within the meaning of 28 U.S.C. § 2244(d)(2). (Doc. 1, Appendix 244-45). However, under the case-law that has since developed on this issue, it has become clear that in fact petitioner's application for delayed reopening of the appeal was not "properly filed," and therefore did not serve to toll the running of the statute of limitations,

---

[6] *But see Lawrence v. Florida,* 421 F.3d 1221, 1224-25 & n.1 (11th Cir. 2005) (noting that the district court abused its discretion in entering a stay order pending the Supreme Court's certiorari ruling in *Abela* and holding that a certificate of appealability should not have issued on the statute of limitations issue because under binding precedent in the Eleventh Circuit–*Coates v. Byrd,* 211 F.3d 1225, 1227 (11th Cir. 2000), *cert. denied,* 531 U.S. 1166 (2001)-- the limitations period was not tolled during the pendency of a petition for certiorari challenging the state court's denial of post-conviction relief), *petition for cert. filed,* No. 05-8820 (U.S. Jan. 23, 2006).

under § 2244(d)(2).[7]

In *Artuz v. Bennett,* 531 U.S. 4, 8 (2000), the United States Supreme Court held that a state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing. Thereafter, the Sixth Circuit ruled that an Ohio prisoner's post-conviction petition dismissed by the state courts as untimely-filed is not "properly filed" and, therefore, cannot serve to toll the limitations period under § 2244(d)(2). *Vroman v. Brigano,* 346 F.3d 598, 603 (6th Cir. 2003); *see also Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001), *cert. denied,* 535 U.S. 1088 (2002). In so holding, the Sixth Circuit emphasized that deference must be accorded to the state courts as "the final authority on state law," and that "federal courts must accept a state court's interpretation of its statutes and its rules of practice." *Vroman,* 346 F.3d at 603; *Israfil,* 276 F.3d at 771.

Recently, in *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005), the Supreme Court confirmed that a state post-conviction petition rejected by the state courts on timeliness grounds is not "properly filed" and is therefore not subject to statutory tolling under § 2244(d)(2). In that case, the state post-conviction statute had recently been amended, and its application was unclear. *See Walker v. Norris,* 436 F.3d 1026, 1031 (8th Cir. 2006) (citing district court decision in *Pace* published at 151 F.Supp.2d 586, 588 (E.D. Pa. 2001)). The trial court ruled on the merits of the petition, and it was not until petitioner's appeal that the state appellate court interpreted the amended statute to require the dismissal of the petition as untimely-filed. *Id.* (citing *Pace,* 151 F.Supp.2d at 589-90).

---

[7] When the Court denied respondent's motion to dismiss in Case No. 1:00cv326, applications for reopening also were considered part of the direct appeal for federal habeas review purposes and, thus, not subject to the "properly filed" requirement of 28 U.S.C. § 2244(d)(2). *See Bronaugh,* 235 F.3d at 285-86. However, in an *en banc* decision, the Sixth Circuit recently changed its position on this issue, overruling its prior precedent and holding in accordance with state case-law that an application for reopening of the appeal under Ohio R. App. P. 26(B) is a collateral post-conviction remedy rather than part of the direct appeal. *Lopez v. Wilson,* 426 F.3d 339, 351-53 (6th Cir. 2005) (en banc), *petition for cert. filed,* No. 05-8475 (U.S. Dec. 30, 2005); *see also Morgan v. Eads,* 818 N.E.2d 1157 (Ohio 2004). Because applications for reopening are no longer considered part of the direct appeal in Ohio, but rather a collateral post-conviction review remedy, it appears they are now subject to the "properly filed" requirement for statutory tolling set forth in 28 U.S.C. § 2244(d)(2).

In the federal habeas action which followed, the district court determined that the state petition was properly filed within the meaning of § 2244(d)(2) "because the petitioner complied with the filing requirements as they existed at the time." *Id.* (citing *Pace,* 151 F.Supp.2d at 590-91). On appeal, the Third Circuit reversed, and the Supreme Court affirmed, concluding that "time limits, no matter their form, are 'filing' conditions" which must be met for a state collateral review petition to be deemed "properly filed" under § 2244(d)(2). *Pace,* 125 S.Ct. at 1814.

In so holding, the Supreme Court rejected the argument that "the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." *Id.* at 1811. The Court reasoned:

> In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.* at 1811-12.

In addition, the Supreme Court was not persuaded by petitioner's argument challenging the fairness of the decision to the extent a "petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never 'properly filed,'" and thus time-barred in a subsequent federal habeas proceeding. *Id.* at 1813. The Court stated that a prisoner seeking state post-conviction relief instead could "avoid this predicament" by "filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted," and that a petitioner's "reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id.*

Finally, the Supreme Court expressly held that as it had intimated in a prior

11

case–*Carey v. Saffold,* 536 U.S. 214, 226 (2002): "When a postconviction petition is untimely under state law, '*that* [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace,* 125 S.Ct. at 1812.

Since *Pace,* statutory tolling of the statute of limitations has not been permitted in cases where the Ohio courts have denied untimely-filed applications for reopening based on the applicant's failure to show "good cause" for the delay in filing. *See, e.g., Taylor v. Wolfe,* No. 3:04CV7514, 2005 WL 2211155, at *5 (N.D. Ohio July 6, 2005) (Limbert, M.J.) (Report and Recommendation) (unpublished), *adopted,* 2005 WL 2205292 (N.D. Ohio Sept. 7, 2005) (Gaughan, J.) (unpublished); *Cunningham v. Jeffries,* No. 3:05CV208, 2005 WL 1378797, at *2 (S.D. Ohio June 7, 2005) (Merz, M.J.) (Report and Recommendation) (unpublished), *and* 2005 WL 1657129, at *1 (S.D. Ohio July 14, 2005) (Merz, M.J.) (Supplemental Report and Recommendation) (unpublished), *adopted,* 2005 WL 2176955 (S.D. Ohio Sept. 2, 2005) (Rose, J.) (unpublished).[8]

Similarly, the state courts in this case determined that petitioner's application for delayed reopening of his appeal was untimely under Ohio law. Therefore, petitioner's delayed reopening application did not serve to toll the limitations period under § 2244(d)(2), and the statute of limitations began to run again on April 22, 1998, the day following the expiration of the ninety-day period for seeking certiorari review in the "properly filed" state post-conviction matter. The statute ran for 225 days before petitioner "filed" his second federal habeas corpus petition in Case No. 1:00cv326 on December 3, 1998.

As the district court pointed out when it ultimately dismissed petitioner's second habeas petition without prejudice on exhaustion grounds (*see* Doc. 15, Ex. 34, p. 9; *see also id.,* Ex. 35), a federal habeas corpus petition is not an "application for State post-conviction or other collateral review" which tolls the limitations period under 28 U.S.C. § 2244(d)(2). *See Duncan v. Walker,* 533 U.S. 167 (2001).

---

[8] *Cf. Hanna v. Jeffreys,* No. 2:05-CV-727, 2006 WL 462357, at *3-4 (S.D. Ohio Feb. 22, 2006) (King, M.J.) (Report and Recommendation) (unpublished) (involving untimely-filed state post-conviction petition and successive applications to reopen the appeal under Ohio R. App. P. 26(B)); *Engel v. Hendricks,* 153 Fed.Appx. 111, 112-13 (3rd Cir. Oct. 31, 2005) (not published in Federal Reporter) (application for state post-conviction relief, which was denied as untimely-filed in the absence of a sufficient showing of "excusable neglect," was not "properly filed" within the meaning of § 2244(d)(2)).

Therefore, if the court had not equitably tolled the running of the statute of limitations in its dismissal order, the statute of limitations, which had run for a total of 324 days, would have expired 41 days later on January 12, 1999, over a year before his second petition was even filed with the district court on remand by the Sixth Circuit for consideration of petitioner's grounds for relief.

In this case, however, the district court ruled in dismissing petitioner's second habeas petition without prejudice as a "mixed" petition that the statute of limitations would be equitably tolled from the time petitioner "filed" his petition with the Sixth Circuit on December 3, 1998 until he filed a renewed petition with the district court after exhausting his state court remedies.  (Doc. 15, Ex. 34, pp. 9-12; Ex. 35).  As the Court indicated, the equitable tolling provision was included in the dismissal order to address the concern expressed by Justice Stevens in his concurring opinion joined by Justice Souter in *Duncan*, and followed by the Sixth Circuit after *Duncan,* to the effect that the equitable powers of the federal court should be employed to toll the statute of limitations to protect the class of state prisoners, like petitioner, "whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted."  *Duncan,* 533 U.S. at 184 (Stevens, J., concurring); *see also Hargrove v. Brigano,* 300 F.3d 717 (6th Cir. 2002); *Palmer v. Carlton,* 276 F.3d. 777 (6th Cir. 2002).

This mandatory equitable tolling provision contained in the district court's dismissal order was expressly conditioned on petitioner's pursuing the specified state remedy of a delayed appeal to the Supreme Court of Ohio within thirty days of entry of the district court's dismissal order, and petitioner's returning to federal court no later than thirty days after exhausting that state remedy.  (*See* Doc. 15, Ex. 34, pp. 11-12, ¶ 1; Ex. 35, p. 2).

Petitioner did not comply with either of these conditions.

First, petitioner failed to file his motion for delayed appeal with the Supreme
Court of Ohio within thirty days of the district court's September 24, 2002
dismissal order, but instead waited 73 days before he filed his motion on December
6, 2002.

Second, petitioner did not return to the federal court with a renewed petition
for habeas corpus relief until October 20, 2003, over nine months after the
Supreme Court of Ohio denied petitioner's motion for delayed appeal on January
25, 2003.

By failing to comply with the conditions for mandatory equitable tolling
explicitly set forth in the order dismissing petitioner's prior federal habeas petition
without prejudice on exhaustion grounds, petitioner is not entitled to the benefits of
the mandatory equitable tolling provision in this case. *Cf. Griffin v. Rogers,* 399
F.3d 626, 635 (6th Cir. 2005) (petitioner not entitled to mandatory equitable tolling
of statute of limitations during pendency of his prior federal habeas petition,
because she did not file her application for delayed appeal with the Ohio courts
until nearly six and one-half months after the dismissal of the prior petition on
exhaustion grounds).[9]

In an analogous case involving the suggested stay of a "mixed" petition
explicitly conditioned "on the prisoner's pursuing state court remedies within a
brief interval, normally 30 days, and returning to federal court within a similarly
brief interval, normally 30 days after state court exhaustion is completed," the
Second Circuit stated:

> If either condition of the stay is not met, the stay may later be vacated
> *nunc pro tunc* as of the date the stay was entered, and the petition may
> be dismissed (unless the time the petitioner has taken to initiate
> exhaustion in the state courts and to return to federal court after
> exhaustion has not consumed more than the portion of the one-year

---

[9]  *See also Palmer,* 276 F.3d at 781-82 (mandatory equitable tolling during the pendency
of petitioner's prior federal habeas action not permitted given the petitioner's "two-month delay"
in returning to the federal court, which was "more than the 'normal' 30-day period suggested . . .
as a reasonable period for a petitioner to return to federal jurisdiction" after exhausting his state
remedies).

limitations period that remained when the habeas petition was initially filed).

*Zarvela v. Artuz,* 254 F.3d 374, 381 (2nd Cir.), *cert. denied,* 534 U.S. 1015 (2001).

Applying this standard to the instant case, the mandatory tolling provision contained in the order dismissing petitioner's prior habeas petition may be vacated and the instant petition dismissed as time-barred, unless the statute of limitations should be equitably tolled based on other traditional equitable tolling principles. *Cf. Griffin,* 399 F.3d at 638-39 (the limitations period may be equitably tolled based on traditional equitable tolling principles even in cases where the petitioner is not entitled to mandatory equitable tolling); *Rockwell v. Palmer*, No. 1:05-CV-205, 2005 WL 3088337, at *4 (W.D. Mich. Nov. 17, 2005) (unpublished) (same).

The Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to the AEDPA's statute of limitations," *Pace,* 125 S.Ct. at 1814 n.8, but the Sixth Circuit has held that the statute of limitations is not jurisdictional and that "equitable tolling does apply to the one-year limitation period applicable to habeas petitions." *Dunlap v. United States,* 250 F.3d 1001, 1003 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001); *see also McClendon v. Sherman,* 329 F.3d 490, 492 (6th Cir. 2003).

In *Pace,* the Supreme Court stated that a petitioner seeking equitable tolling generally bears the burden of establishing that (1) he has been pursuing his rights diligently; and (2) "some extraordinary circumstance stood in his way." *Pace,* 125 S.Ct. at 1814 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)). Before *Pace,* the Sixth Circuit required the court to consider the following factors in determining whether the statute of limitations governing federal habeas petitions should be equitably tolled:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) the petitioner's diligence in pursuing his rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap,* 250 F.3d at 1008 (citing *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.

1988)).  Under this test, the absence of prejudice to respondent is not an independent basis for invoking the doctrine of equitable tolling.  *Dunlap,* 250 F.3d at 1009; *Andrews,* 851 F.2d at 151(citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)).  The absence of prejudice may only be considered when other factors of the test are met.  *Id.*

Here, petitioner has not demonstrated that some extraordinary circumstance prevented him from filing a timely federal habeas corpus petition with this Court. He was provided the opportunity to file a timely petition when the district court equitably tolled the limitations period in its order dismissing his prior habeas petition for failure to exhaust the available state remedy of a delayed appeal to the Supreme Court of Ohio.  Petitioner was explicitly informed in that order that the tolling was conditioned on his pursuing the state delayed appeal remedy within thirty days and returning to the federal court within thirty days after exhausting that remedy.  Petitioner, therefore, cannot claim that anything other than his own failure to comply with these specified tolling conditions prevented him from returning to the federal court in a timely manner.

Petitioner also has not demonstrated he is entitled to equitable tolling under *Dunlap*.  First, petitioner does not argue, nor is there evidence in the record to suggest, that he was ignorant, or lacked notice or constructive knowledge, of the one-year filing requirement for federal habeas petitions.  Petitioner may have been misled about the filing requirement to the extent that the district court in the prior habeas proceeding determined that the statute of limitations was tolled during the pendency of his application for delayed reopening of his appeal in the state courts. However, petitioner also was expressly informed in the prior proceeding that any subsequent federal habeas petition brought by him could be considered time-barred unless he complied with the conditions specified in the equitable tolling provision contained in the district court's dismissal order.

Most importantly, petitioner has not demonstrated that he acted with due diligence in pursuing his state and federal remedies.  Like the petitioner in *Pace,* petitioner waited years after his direct appeal concluded in 1985 before he took any action to challenge his conviction.  When the district court dismissed his first federal habeas petition on exhaustion grounds in March 1995, over a year before the enactment of the AEDPA's one-year statute of limitations, petitioner did not return to the state courts to exhaust any state remedies until nearly one and one-half

16

years later when he filed his state post-conviction petition on August 1, 1996.

Indeed, petitioner did not attempt to exhaust any of the available state court remedies that were actually specified in the order dismissing his first federal habeas petition until over three years later when he filed his motion for delayed reopening of his appeal with the Ohio Court of Appeals on April 13, 1998. Moreover, although petitioner was informed when his first federal habeas petition was dismissed that the remedy of a delayed appeal to the Supreme Court of Ohio was also available for him to pursue relief on certain claims, he did not file such a motion in the state courts until after his second federal habeas petition was dismissed on that same exhaustion ground.

Finally, petitioner did not comply with the express conditions for equitable tolling that were set forth in the order dismissing his second federal habeas petition. He waited over two months after that petition was dismissed before he filed a motion for delayed appeal with the Supreme Court of Ohio, and over nine months after he exhausted the delayed appeal remedy before he returned to the federal court by filing the instant petition. Therefore, equitable tolling under *Dunlap* is inappropriate in this case.

Petitioner also has suggested that the statute of limitations should be equitably tolled in this case because he is actually innocent of the sexual offense crimes that resulted in his conviction and sentence.

The Sixth Circuit has held that equitable tolling applies to permit review of an otherwise time-barred petition based on a credible claim of actual innocence. *Souter v. Jones,* 395 F.3d 577, 601 (6th Cir. 2005). To establish such a claim, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence . . . that was not presented at trial." *Id.* at 590 & n.5 (quoting *Schlup v. Delo,* 513 U.S. 298, 324, 327 (1995)). This actual innocence exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* (quoting *Schlup,* 513 U.S. at 317, 321).

Here, petitioner's submissions in support of his petition and "traverse" brief do not constitute "new reliable evidence" sufficient to undermine confidence in the

result of his criminal trial. Therefore, the actual innocence exception does not apply to overcome the statute of limitations bar in this case.

Accordingly, in sum, the undersigned concludes that under the one-year grace period afforded when the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) was enacted on April 24, 1996, the statute commenced running in this case on April 24, 1996 (the date of the AEDPA's enactment); ran for 99 days before it was tolled from August 1, 1996 through April 21, 1998 during the pendency of state post-conviction proceedings initiated by petitioner; commenced running again on April 22, 1998; and expired on January 12, 1999, based on petitioner's failure to comply with the conditions set forth in the mandatory equitable tolling provision contained in the district court's order dismissing his second federal habeas petition without prejudice on exhaustion grounds. Petitioner has not demonstrated the statute of limitations is subject to equitable tolling under traditional equitable tolling principles or based on a showing of his actual innocence. Therefore, the instant federal habeas corpus petition "filed" at the earliest on October 20, 2003, over four and one-half years after the statute of limitations expired, is time-barred.

## B. Alternatively, The Petition Should Be Dismissed With Prejudice On The Ground That Petitioner Has Waived His Claims For Relief

In the return of writ, respondent argues the even assuming, *arguendo,* the petition is not barred from review on statute of limitations grounds, petitioner waived his claims for relief alleged in the petition due to his procedural defaults in the state courts. (Doc. 15, Brief, pp. 20-32). This argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S.

18

831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

   If petitioner fails to fairly present his claims through the requisite of levels of
state appellate review to the state's highest court, or commits some other
procedural default to preclude review of the merits of his claims by the state's
highest court, and if no avenue of relief remains open or if it would otherwise be
futile for petitioner to continue to pursue his claims in the state courts, the claims
are subject to dismissal with prejudice as waived.  *See O'Sullivan,* 526 U.S. at
847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d
811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir.
1989).

   If, because of a procedural default, petitioner has not had his claims
considered by the state's highest court on the merits and he can no longer present
his claims to the state courts, he has waived the claims for purposes of federal
habeas corpus review unless he can demonstrate cause for the procedural default
and actual prejudice resulting from the alleged constitutional errors, or that failure
to consider the claim will result in a "fundamental miscarriage of justice."
*Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477
U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v.
Sykes,* 433 U.S. 72, 87 (1977).

   In this case, petitioner has committed numerous procedural defaults.

   First, petitioner has exhausted all available state remedies.  Therefore, he has
committed  a procedural default to the extent he seeks relief based on a claim that
he has never presented before to the state courts.

   Second, petitioner has committed a procedural default to the extent he seeks
relief based on a claim that he raised on direct appeal to the Ohio Court of Appeals.
Petitioner did not perfect a timely appeal to the Supreme Court of Ohio from the
Court of Appeals' direct appeal decision.  Although years later he attempted to
obtain a delayed appeal, the Supreme Court of Ohio denied his motion for leave to
appeal without opinion.  The Sixth Circuit has held in an analogous case that the
Ohio Supreme Court's unexplained entry denying a motion for delayed appeal
"constitutes a procedural ruling sufficient to bar federal court review of [a] habeas
corpus petition."  *Bonilla v. Hurley,* 370 F.3d. 494, 497(6th Cir.) (per curiam), *cert.*

*denied,* 543 U.S. 989 (2004).  In so holding, the court reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits."  *Id.* (and unpublished Sixth Circuit cases cited therein).

Third, petitioner committed a procedural default to the extent he seeks relief based on any claims that he raised in his state post-conviction petition.

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision.  *Harris,* 489 U.S. at 260-62.  The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules.  *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813.  The doctrine also applies when the state-law ground relied on by the state court constitutes an alternative holding of the court.  *See, e.g., Sochor v. Florida,* 504 U.S. 527, 533-34 (1992); *Coleman,* 501 U.S. at 733.

Such a procedural default, however, does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar.  *Harris,* 489 U.S. at 263.  In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed adequate or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied.  *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 126 S.Ct. 602 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,*

20

507 U.S. 932 (1993).  To be deemed "regularly followed," a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n. 6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6ᵗʰ Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001).  In addition, adequacy requires application of the rule "evenhandedly to all similar claims." *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982); *Maes v. Thomas,* 46 F.3d 979, 986 (10ᵗʰ Cir.), *cert. denied,* 514 U.S. 1115 (1995).

In this case, the Ohio Court of Appeals was the last state court to render a reasoned opinion addressing the claims of error raised by petitioner in his state post-conviction petition.  That court "clearly and expressly" held "at the outset" that petitioner's assignments of error "could have been raised . . . in the direct appeal of his conviction" and thus were barred from review under the state-law *res judicata* doctrine, which was by then firmly-established and regularly-followed in Ohio.  (*See* Doc. 15, Ex. 25, pp. 2-3) (citing *State v. Perry,* 226 N.E.2d 104 (Ohio 1967)).  Although the court proceeded to alternatively address the merits of petitioner's claims, the state procedural ground initially relied on by the Court of Appeals constitutes an "adequate" and "independent" state ground, which serves to preclude review of the merits of petitioner's claims for relief in this proceeding.

Finally, petitioner committed a procedural default with respect to any ineffective assistance of appellate counsel claims or other claim challenging the direct appeal proceedings, which he may have raised in his application for delayed reopening of his appeal.

The Ohio Court of Appeals was the only state court to render a reasoned opinion addressing petitioner's reopening application.  The court "clearly and expressly" relied on an adequate and independent state ground when it denied the application on the grounds that it was not timely filed and petitioner had not established "good cause" for his over twelve-year delay in filing, particularly in light of the Supreme Court of Ohio's decision three years earlier in *State v.*

21

*Reddick,* 647 N.E.2d 784, 786 (Ohio 1995).  (*See* Doc. 15, Ex. 14).[10]  *Cf. Monzo v. Edwards,* 281 F.3d 568, 577-78 (6th Cir. 2002).

In *Monzo,* the Sixth Circuit reasoned:

Our review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause at the time the rule was applied in this case.  We do not dwell on the decisions issued shortly after the *Murnahan* decision, as the Ohio courts have had several years since then to consider the "good cause" requirement. . . . The Ohio Supreme Court shed light on the appropriate focus for determining good cause under Rule 26(B) in *State v. Reddick,* 72 Ohio St.3d 88, 647 N.E.2d 784, 786 (1995). . . .  That is, the Court in *Reddick* stressed that:

Neither *Murnahan* nor App.R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals.  Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances.  Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.

-------------

[10]  *See also Knuckles v. Brigano,* 70 Fed.Appx. 830, 841 (6th Cir. July 22, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 1113 (2004); *Lewis v. Randle,* 36 Fed.Appx. 817, 819 (6th Cir. Apr. 30, 2002) (not published in Federal Reporter), *cert. denied,* 537 U.S. 1137 (2003); *cf. Carpenter v. Edwards,* 113 Fed. Appx. 672, 677 (6th Cir. Oct. 28, 2004) (not published in Federal Reporter) (holding that Rule 26(B) was not regularly followed in 1994, but by 1998, application of rule had been regularized); *see generally Richey,* 395 F.3d at 679-80 (in April 1994, when petitioner moved to reopen his appeal, the Ohio R. App. P. 26(B)'s "good cause" requirement was not firmly established or regularly followed, and therefore did not constitute an adequate and independent state procedural rule).

647 N.E.2d at 786.  Further, "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." *State v. Williams,* 74 Ohio St.3d 454, 659 N.E.2d 1253, 1254 (1996). *See also State v. Franklin,* 72 Ohio St.3d 372, 650 N.E.2d 447, 448 (1995) (ignorance of the law does not justify untimely filing of a motion to reopen)[.] . . .   Thus, we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim.

*Monzo,* 281 F.3d at 578 (some citations omitted).

By April 1998, when petitioner filed his delayed reopening application, it was a firmly established and regularly followed practice in Ohio to find that an appellant's claimed inability to obtain the trial transcript or other court records will not justify his untimely filing of a reopening application when, as here, the alleged deficiency in appellate counsel's performance does "not require a transcript to be identified."  *See State v. Bell,* 652 N.E.2d 191, 192 (Ohio 1995) (per curiam); *see also State v. Houston,* 652 N.E.2d 1018, 1019 (Ohio 1995) (per curiam);[11]  *State v. Gross,* No. 76836, 2005 WL 793141, at *2 (Ohio Ct. App. Apr. 4, 2005) (unpublished) (and numerous state cases cited therein).[12]

Accordingly, the undersigned concludes that petitioner has waived his

---

[11]  In *Houston,* the defendant subsequently filed a federal habeas corpus petition alleging in part that his state appellate counsel was ineffective.  The district court found the claim was waived because of petitioner's procedural default in failing to file a timely reopening application. In affirming the district court's decision, the Sixth Circuit expressly rejected the petitioner's claim that his inability to obtain the trial transcript constituted "cause" for his procedural default in the state courts.  *See Houston v. Anderson,* 129 F.3d 1264 (table), No. 96-4386, 1997 WL 693552, at **2 (6th Cir. Oct. 31, 1997), *cert. denied,* 525 U.S. 850 (1998).

[12]  In any event, petitioner's claim that he was precluded from timely filing an application for reopening because he was refused access to his state court records is meritless.  Petitioner does not explain why he did not seek access to these records until 1993-94, eight to nine years after his direct appeal.  Moreover, he managed to file a federal habeas corpus petition in 1994, a state post-conviction petition in 1996, and ultimately his application for reopening in April 1998, without these records. Therefore, it was reasonable for the court to conclude that any failure to provide petitioner with court documents and information did not constitute "good cause" for his delay in filing.

claims for relief alleged in the instant petition, absent a showing of cause and prejudice or that a fundamental miscarriage of justice will result if such claims are not considered.  However, as discussed above in addressing the statute of limitations issue, *see supra* pp. 16-17, petitioner has not demonstrated a fundamental miscarriage of justice will occur if his claims are not considered, or in other words, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent."  *See Murray,* 477 U.S. at 495-96; *see also Schlup,* 513 U.S. at 327.

Petitioner has alleged that his appellate counsel was ineffective, which may constitute "cause" for a procedural default.  *See Murray,* 477 U.S. at 488. However, as discussed above, *see supra* pp. 21-22, petitioner also procedurally defaulted his ineffective assistance of appellate counsel claim in the state courts. Therefore, he is unable to establish "cause" in this case.  *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Richey,* 395 F.3d at 679.

Accordingly, in sum, the undersigned concludes that the petition is subject to dismissal with prejudice based on the alternative procedural ground that petitioner has waived his claims for relief due to his procedural defaults in the state courts.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the constitutional claims alleged in the petition, which this Court has concluded are barred from review on procedural statute of limitations and waiver grounds. Although "jurists of reason" may find it debatable whether the Court is correct in its procedural ruling on the statute of limitations issue under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its alternative procedural ruling on waiver grounds.[13]

---

[13] Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6ᵗʰ Cir. 1997).

Date:   5/4/06

      cbc

                                             s/Timothy S. Black

                                             Timothy S. Black

                                             United States Magistrate Judge

J:\BRYANCC\2006 habeas orders\03-865denypet.sol-waiv.wpd

---

debatable whether petitioner has stated any viable constitutional claims in the petition. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

───────────────────────────

William H. Gorman,
    Petitioner


       vs                              Case No. 1:03cv865
                                        (Dlott, J.; Black, M.J.)


Tim Brunsman,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)   Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).